IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TORBEN DILENG,

                     Plaintiff,

    v.                                                                      1:15-cv-1777-WSD

COMMISSIONER OF INTERNAL
REVENUE SERVICE,

                     Defendant.

## OPINION AND ORDER

This matter is before the Court on the United States'[1] Motion to Dismiss [7]

(the "Motion").  Also before this Court is Plaintiff Dileng Torben's ("Plaintiff")

Motion for Leave to Amend [10] (the "Motion to Amend"),[2] and his Emergency

Motion for Preliminary Injunction [2] ("Injunction Motion").

## I.   INTRODUCTION

This case involves the collection of taxes owed to the Kingdom of Denmark

by Plaintiff, a Danish citizen legally residing in the United States.  Denmark

requests, under the Convention for the Avoidance of Double Taxation and the

---

[1]     Plaintiff, by listing the Commissioner of the Internal Revenue Service as a
defendant, has made the United States the real party of interest in this action.  See
Bateman v. Depczynski, No. 1:12-CV-04118-SCJ, 2013 WL 7121195, at *3 (N.D.
Ga. July 8, 2013); (Plaintiff's Resp. to Mot. [10] at 3 n.3).
[2]     Plaintiff's Motion to Amend is contained as an alternative request for relief
in his Response in Opposition to the United States' Motion to Dismiss.

Prevention of Fiscal Evasion with Respect to Taxes on Income, with Protocol, U.S.-Denmark (the "Treaty"),[3] that the United States collect these Danish taxes from Plaintiff.  Plaintiff is challenging the tax assessment in an action he filed in Denmark.  Plaintiff argues that the United States is not permitted to assist in collecting the taxes until the challenge it concluded.  The United States argues that it is authorized to collect the taxes because Denmark certified, under the Treaty, that the taxes have been "finally determined" and thus the United States is required by the Treaty to collect them.  The United States also argues that the Court lacks jurisdiction over Plaintiff's claims because: (i) the United States did not waive its sovereign immunity to allow this action, and (ii) the Declaratory Judgment Act, 28 U.S.C. § 2201 (the "DJA") and the Anti-Injunction Act, 26 U.S.C. § 7421 (the "AIA") bar the Court from granting the relief Plaintiff seeks.  Plaintiff claims that certain judicial exceptions to the DJA and the AIA apply to allow the Court to exercise jurisdiction over this case.  (Compl. ¶¶ 1-2).

## II.    BACKGROUND

On May 19, 2015, Plaintiff filed his Complaint for Declaratory Judgment and Injunctive Relief [1] (the "Complaint").  Plaintiff legally resides in the

---

[3]      A copy of the Treaty can be found at http://www.state.gov/documents/organization/124446.pdf.  The Treaty became effective on March 31, 2000.

United States with his family.  (Compl. ¶ 4).[4]  Before this action was filed, the

Skatteministeriet (the "SKAT"), Denmark's Ministry of Taxation, determined that

Plaintiff owes it approximately $2.5 million in unpaid taxes (the "Taxes").  (Id.

¶¶ 7, 13).  Plaintiff filed an action in Denmark to challenge this tax liability.  (Id. ¶

7).  The Danish suit is pending.[5]  (Id.).

The SKAT requested, under the Treaty, that the Internal Revenue Service

(the "Service") assist it to collect the Taxes from Plaintiff.  (Id. ¶¶ 8-9, 11).  The

Service informed Plaintiff that to collect the taxes it intended to begin levying on

assets Plaintiff owns in the United States.  (Id. ¶ 8).  Plaintiff responded to the

notification of levy by filing a Collection Appeal Request (the "Request")

proceeding, asking that the Service stop its collection efforts in light of the action

Plaintiff filed in Denmark challenging his liability for the Taxes.  (Id. ¶ 9).  The

Service denied the Request on the grounds that the Service is required by the

Treaty to collect the taxes the SKAT determined are owed by, and immediately

collectable from, Plaintiff.  (Id.).  Plaintiff asserts that the collection of the

$2.5 million in taxes "would be financially ruinous" for him and would "destroy

his ability to [] care for his family . . . ."  (Id. ¶ 13).

---

[4]     Before Plaintiff came to the United States, he conducted business in
Denmark, and paid taxes as assessed by the SKAT.  (Compl. ¶ 4).
[5]     Plaintiff's counsel has informed the Court that trial in this matter was set to
begin on January 14, 2016, with a decision expected in February 2016.

Plaintiff argues he is entitled to a declaratory judgment that the Service cannot collect the Taxes until the Danish courts fully and finally adjudicate his tax liability.  (Id. ¶¶ 14-18).  Plaintiff also seeks to enjoin collection of the Taxes until his case in Denmark is concluded.  (Id. ¶¶ 19-27).

On June 3, 2015, the Court held a hearing on Plaintiff's request for injunctive relief.  At the hearing, the Court stated it first has to address the United States' claims that the Court does not have jurisdiction to consider Plaintiff's Injunction Motion.  The United States represented it did not intend to take action to collect the Taxes until the Court rules on its Motion to Dismiss.

## III.   DISCUSSION

### A.   Legal Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits litigants to move for dismissal when the court lacks jurisdiction over the subject matter of the dispute.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may be either a "facial" or "factual" attack.  Morrison v. Amway Corp., 323 F.3d 920, 924-25 n.5 (11th Cir. 2003).  A facial attack challenges subject

4

matter jurisdiction on the basis of the allegations in a Complaint, and the district court takes the allegations as true in deciding whether to grant the motion.  Id.

Factual attacks challenge subject matter jurisdiction in fact.  Id.  When resolving a factual attack, the Court may consider extrinsic evidence, such as testimony and affidavits.  Id.  In a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not apply, Scarfo v. Ginsberg, 175 F.3d 957, 960-61 (11th Cir. 1999).  The plaintiff has the burden to prove that jurisdiction exists.  Elend v. Basham, 471 F.3d 1199, 1206 (11th Cir. 2006).

The United States here asserts a factual challenge to the Court's jurisdiction over Plaintiff's claims.  The United States contends that Denmark certified that it had reached a final determination that the Taxes are due and owing and that the Treaty requires the United States to assist in their collection.  (Mot. at 7).  This factual attack allows the Court to consider facts outside the Complaint to determine if it has subject-matter jurisdiction over this case.  See Morrison, 323 F.3d at 924-25 n.5.

5

B.    Analysis

    1.    Sovereign Immunity and the Adjudication of Matters
       Concerning Federal Taxation

"The United States, as a sovereign entity, is immune from suit unless it consents to be sued." Christian Coalition of Florida, Inc. v. United States, 662 F.3d 1182, 1188 (11th Cir. 2011) (citing United States v. Dalm, 494 U.S. 596, 608 (1990)). "[T]he terms of its consent to be sued in any court," as expressed by statute, "define that court's jurisdiction to entertain the suit." Id. (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). "[T]he terms of the statute or statutes waiving immunity are construed strictly, and courts may only entertain suits that are in full accord with such statutes." Id. "[T]he plaintiff bears the burden of establishing subject matter jurisdiction, and, thus, must prove an explicit waiver of immunity." Ishler v. Internal Revenue, 237 F. App'x 394, 398 (11th Cir. 2007) (citations omitted).

The principal jurisdictional statute governing judicial review of federal tax decisions is 28 U.S.C. § 1346(a). It provides:

> The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of: (1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws[.]

28 U.S.C. § 1346(a)(1).  Section 1346(a)(1) grants the district courts original

jurisdiction where a taxpayer is seeking to recover an internal-revenue tax "alleged

to have been erroneously or illegally assessed or collected."  28 U.S.C.

§ 1346(a)(1); see also, e.g., Stovall ex rel. Talbot v. U.S. ex rel. C.I.R., 471 F.

App'x 852, 853 (11th Cir. 2012) (finding that district court lacked jurisdiction over

action because plaintiff had not made a "full payment of the assessment") (quoting

Flora v. United States, 362 U.S. 145 (1960)).

For the purpose of the collection assistance provided under the Treaty, the

"Treaty explicitly requires the revenue claim by the Danish to be treated like U.S.

federal income taxes for purposes of domestic U.S. law."  (Mot. at 10);[6] see also

Treaty Art. 27 ¶ 4(a) ("Where an application for collection of a revenue claim in

respect to a taxpayer is accepted . . . by the United States, the revenue claim shall

be treated by the United States as an assessment under United States laws against

_____

[6]     Plaintiff argues that the United States is trying to "have it both ways" by
treating the Danish tax assessment as if it were an assessment of United States
taxes by the Service for the purpose of applying the DJA and the AIA, but at the
same time arguing that the United States' courts cannot provide relief to Plaintiff
because the taxes are Danish taxes.

     The Court disagrees with Plaintiff's presentation of the United States'
position.  There is nothing inconsistent in the United States' application of the
Treaty, which requires both that the requested State, here the United States, treat
the revenue claim as if it were a claim for domestic taxes under domestic law,
while at the same time arguing that Plaintiff, under the Treaty, must contest the
validity of the Danish tax assessment in Denmark.

the taxpayer as of the time the application is received").[7] The Treaty, however, does not provide that a citizen of the applicant country against whom collection efforts for foreign taxes are directed is afforded all of the rights and challenge mechanisms that a citizen of the requested country might have to challenge the assessed tax in the requested country. Indeed, the Treaty requires the requested country to accept that the taxes are due upon certification by the applicant country. Even treating the accepted revenue claim from Denmark as if it were an assessment of United States internal-revenue taxes, Section 1346(a)(1) does not apply, and Plaintiff does not argue that it does. The Court does not have original jurisdiction over Plaintiff's claims under Section 1346(a)(1). The Court thus turns to Plaintiff's main argument that certain judicially-created exceptions to the DJA and AIA apply. (See Compl. ¶¶ 1-2). The Court begins with the historical backdrop behind these statutes.

There also has been a long-standing Congressional policy excluding various types of federal tax disputes from judicial review. See Christian Coalition,

---

[7]     The Department of the Treasury's Technical Explanation of the Treaty interprets this section to mean that "when the United States accepts a request for assistance in collection, the claim will be treated by the United States as an assessment as of the time the application was received. Similarly, when Denmark accepts a request, a revenue claim shall be treated by Denmark as an assessment under Danish laws against the taxpayer as of the time the application is received." Technical Explanation of U.S-Danish Tax Treaty at 91. A copy of the Technical Explanation can be found at https://www.irs.gov/pub/irs-trty/dentech.pdf.

662 F.3d at 1188.  "The Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, which generally authorizes courts to issue declaratory judgments as a remedy, excludes federal tax matters from its remedial scheme."  Id. at 1188-89; see also Raulerson v. United States, 786 F.2d 1090, 1093 n.7 (11th Cir. 1986).  That is, the DJA "proscribes judicial declaration of the rights and legal relations of any interested parties in disputes involving federal taxes."  Raulerson, 786 F.2d at 1093 n.7 (internal quotation marks omitted).

In enacting the AIA, Congress provided that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  26 U.S.C. § 7421(a).[8]  The purpose of the AIA "is to permit the United States to assess and collect taxes alleged to be due without judicial intervention, and to require that the legal right to the disputed sums be determined in a suit for refund."  Enochs v. Williams Packing & Nav. Co., 370 U.S. 1, 7 (1962).  In short, the statutory grant of jurisdiction to the Court to hear a challenge to a tax assessment and liability is narrow and limited to an action for a refund of taxes fully paid.  See 28 U.S.C. § 1346(a).

---

[8]     Section 7421 contains certain limited exceptions to this prohibition against injunctive relief that do not apply here.

2.   <u>The Treaty</u>

Plaintiff's argument that the Court has jurisdiction to adjudicate his claims relies on his interpretation of the Treaty, requiring the Court to review the sections of the Treaty relevant to Plaintiff's claims.

The Treaty determines the agreement between the United States and Denmark relating to assistance these two sovereigns have agreed to provide each other in the collection of taxes.  The Treaty provides that the United States and Denmark will "undertake to lend assistance to each other in the collection of taxes . . . together with interest, costs, additions to such taxes, and civil penalties, referred to in this Article as a 'revenue claim.'"  Treaty Art. 27 ¶ 1.

The Treaty provides further:

> An application for assistance in the collection of a revenue claim shall include a certification by the competent authority of the applicant State that, under the laws of that State, the revenue claim has been finally determined.  For the purposes of this Article, a revenue claim is finally determined when the applicant State has the right under its internal law to collect the revenue claim and all administrative and judicial rights of the taxpayer to restrain collection in the applicant State have lapsed or been exhausted.

<u>Id.</u> ¶ 2.  The Treaty states that it should not be construed as:

> creating or providing any rights of administrative or judicial review of the applicant State's finally determined revenue claim by the requested State, based on any such rights that may be available under the laws of either Contracting State.  If, at any time pending execution of a request for assistance under this Article, the applicant State loses

the right under its internal law to collect the revenue claim, the
competent authority of the applicant State shall promptly withdraw
the request for assistance in collection.

Id. ¶ 5.

The Treaty provides that the requested State may accept a finally determined

revenue claim and, if accepted, the revenue claim "shall be collected as though

such revenue claim were the requested State's own revenue claim finally

determined in accordance with the laws applicable to the collection of the

requested State's own taxes." Id. ¶ 3.  Where the revenue claim is accepted by the

United States, the United States is required to treat the revenue claim "as an

assessment under United States laws against the taxpayer as of the time the

application is received." Id. ¶ 4(a).  In other words, as the United States correctly

argues, a revenue claim, if accepted, is treated by the United States as if it were an

assessment of taxes owed to the United States itself, subject to the laws of the

United States in collecting its own taxes, including the DJA and the AIA.  See id.;

see also Technical Explanation of U.S-Danish Tax Treaty at 91.  It is undisputed

that the United States has accepted Denmark's revenue claim against Plaintiff.

### 3.   Jurisdiction Over Plaintiff's Claims

Plaintiff acknowledges the significant limitations to jurisdiction of the

United States courts over tax disputes, recognizing that the DJA expressly

"excludes federal tax matters from its remedial scheme," and the AIA provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."  (Resp. at 2-3)' see also Christian Coalition, 662 F.3d at 1188; 26 U.S.C. § 7421(a).  Plaintiff thus relies instead on two judicially-created exceptions to the AIA that he argues allows the Court to exercise jurisdiction over his claims.[9]  These exceptions were carved out in Williams Packing and S. Carolina v. Regan, 465 U.S. 367, 378 (1984).  The Court addresses each in turn and evaluates whether they apply here.

a)     Williams Packing Exception to the AIA

In Williams Packing, the Supreme Court developed a judicial exception to the AIA in certain actions challenging the collection of United States taxes.  The exception is limited.  It allows a party to avoid the general prohibition against injunctions against collection of federal taxes when two conditions are met: (i) "it

---

[9]      To the extent Plaintiff may have claimed jurisdiction could be exercised under the DJA, the Court deems that argument abandoned.  Plaintiff's only reference to the DJA is an unsupported assertion, contained in a single footnote of his Response, that if the Taxes are not to be treated as "federal taxes" under the Treaty, the prohibition against declaratory judgments for federal tax matters does not apply.  The Treaty clearly requires that Taxes be treated like U.S. federal income taxes for purposes of domestic U.S. law.  Treaty Art. 27 ¶ 4(a).  The DJA, thus, applies to this matter and bars the Court from considering Plaintiff's claim for declaratory relief.

is clear that under no circumstances could the Government ultimately prevail" and (ii) "equity jurisdiction otherwise exists." Williams Packing, 370 U.S. at 7 (1962).

The first prong requires that the taxpayer show that the "claim of liability [is] without foundation." Id. at 8. In other words, a federal district court may enjoin the Service from collecting taxes alleged to be due to the United States on if it is clear there are no circumstances under which the United States could ultimately prevail on establishing that the taxpayer is liable for the assessed taxes. Id. at 7-8. The second prong requires the taxpayer to show that, in the absence of an injunction, he will suffer irreparable injury and has no adequate remedy at law. See, e.g., Gulden v. United States, 287 F. App'x 813, 816 (11th Cir. 2008) (discussing equity jurisdiction). In the case here, it is the Plaintiff's burden to establish jurisdiction and he must show this exception applies. He is unable to do so.

Plaintiff focuses largely on the first prong, arguing that the United States cannot prevail on its claim that it is entitled to assist in collection of the Taxes. Plaintiff argues that the revenue claim is not "finally determined" under the Treaty, and, thus, is not immediately collectable. (Resp. at 5-12). By failing to provide him with the ability to challenge the collection of the Taxes in the United States courts, Plaintiff contends his Due Process rights are violated. (Id.).

13

Plaintiff, however, fails to meet the first prong test, which is exacting. Plaintiff does not and cannot show that the "claim of liability [is] without foundation." See Williams Packing, 370 U.S. at 8. Plaintiff's Treaty-based argument sidesteps the required showing that this narrow exception provides for a limited waiver of the United States' sovereign immunity in this case. The exception allows a challenge to a tax assessment only where a plaintiff can show that the United States will not prevail on the tax assessed. Plaintiff here does not challenge the underlying validity of the Taxes in the United States, and does not assert in his Complaint, or in his Response, that there are no circumstances under which he can be found liable for the Taxes in Denmark. Plaintiff's claim that certain Treaty provisions were not met to allow collection assistance does not satisfy the first prong of the narrow Williams Packing exception that allows a limited challenge to the assessment of taxes.

Even if the Williams Packing exception applied to actions contesting only the lawfulness of the immediate collection of taxes, as opposed to their underlying validity, Plaintiff still does not meet the requirements of the exception's first prong. Plaintiff argues that the United States cannot prevail on its interpretation that it is obligated under the Treaty to provide collection assistance because (1) the Taxes were not, in fact, "finally determined;" and (2) the collection of the Taxes

14

before the Danish courts have finished adjudicating his liability violates his Due

Process rights.

(1)     Finally Determined Revenue Claims

The Treaty states that "a revenue claim is finally determined when the

applicant State has the right under its internal law to collect the revenue claim and

all administrative and judicial rights of the taxpayer to restrain collection in the

applicant State have lapsed or been exhausted."  Treaty Art. 27 ¶ 2.

Plaintiff's argument is that the pending action in the Danish court on

Plaintiff's tax challenge shows that the SKAT certification to the United States

under the Treaty that the Taxes are collectible and "finally determined" was wrong,

and that this is sufficient to show the United States "cannot prevail" in its

interpretation of the Treaty.  This argument is illogical and does not meet Williams

Packing's first prong.  To require the United States to determine the status of

Denmark's tax claim would violate the Treaty, which states that nothing in Article

27 "shall be construed as creating or providing any rights of administrative or

judicial review of the applicant State's finally determined revenue claim by the

requested State, based on any such right that may be available under the laws of

either Contracting state."  Treaty Art. 27 ¶ 5.[10]  More importantly, the Danish court

may well reject Plaintiff's challenge to the Taxes and, in doing so, the

United States would prevail in its interpretation that collection assistance is

required to be given under the Treaty.

Plaintiff's argument that his claim has not been "finally determined" is not

supported by Danish law.  Plaintiff seeks in his action in Denmark that the SKAT

forbear on its collection efforts.  (Resp. at 7-9).  His request is one for "*henstand*,"

which means "forbearance" or "postponement."  (Id. at 7).  Plaintiff describes this

action as follows: "[i]n sum, by an Act of Denmark's Parliament, a taxpayer may

ask the Danish taxing authorities to postpone or forbear collection . . . ."  (Id. at 8).

Plaintiff does not assert, or provide any authority to support, that a mere request for

*henstand* precludes the SKAT's right to immediately collect taxes it has assessed,

or that *henstand* constitutes a "right to restrain collection" as discussed in the

Treaty.  Plaintiff's request for "*henstand*" does not impact the obligation of the

---

[10]    The Department of the Treasury's Technical Explanation of the Treaty interprets this section to mean that "when an application for collection assistance has been accepted, the substantive validity of the applicant State's revenue claim cannot be challenged in an action in the requested State."  Technical Explanation of U.S-Danish Tax Treaty at 91.  "It is well settled that the Executive Branch's interpretation of a treaty 'is entitled to great weight.'"  Abbott v. Abbott, 560 U.S. 1, 15 (2010) (quoting Sumitomo Shoji Am., Inc. v. Avagliano, 457 U.S. 176, 185 (1982)).

Plaintiff to pay the Taxes which Denmark requested the Service to assist it in collecting.[11, 12]

In short, Denmark certified more than once that Plaintiff has a "finally determined" tax liability that is immediately collectable, and has requested, under the terms of the Treaty, that the United States assist it in collecting the unpaid taxes.  (See Declaration of Peter Woodburn [7.1] ¶¶ 2-12).  For these reasons alone, Plaintiff cannot rely on the Williams Packing exception.

(2)   Due Process Claim

Plaintiff argues also that the Williams Packing exception applies because the collection of the Taxes by the United States violates his Due Process rights, and

---

[11]   The correspondence between the SKAT and the Service supports that Plaintiff is obligated, in Denmark, to immediately pay the Taxes.  On February 18, 2015, Ms. Heidi Bendixen, of SKAT, e-mailed Mr. Timothy Burke, of the Service. ([7.2] at 3).  Ms. Bendixen noted that Plaintiff was appealing his tax liability in Denmark, but that, according to Danish law, Plaintiff was obligated to pay the tax even if the tax liability was disputed.  (Id.).  Ms. Bendixen noted further that the only way to avoid collection was to get a deferment, which Plaintiff did not obtain. (Id.).

[12]   That Plaintiff continues to challenge his tax liability in Denmark does not, by itself, mean that his tax liability has not been "finally determined."  The Treaty states that where "the applicant State loses the right under its internal law to collect [a] revenue claim, the competent authority of the applicant State shall promptly withdraw the request for assistance in collection."  Treaty Art. 27 ¶ 5.  This provision implies that a taxpayer may continue to challenge a tax assessment in the applicant State after the applicant State requests collection assistance, without rendering the request for collection assistance invalid.  Denmark has not withdrawn its collection assistance request because it did not lose right to collect the revenue claim based on the Taxes.  See id.

that the United States, thus, cannot prevail in its collection efforts.[13]  (Resp. at 8-12).  Plaintiff claims, under United States law, that the Service cannot collect taxes until the taxpayer has had an opportunity to exhaust his administrative remedies, including his right to litigate his tax liability fully in Tax Court.  (Resp. at 9).  He contends that the United States is bound by United States law to refrain from collecting the Taxes until Plaintiff has fully litigated his tax claim in the Danish equivalent of the Tax Court.  (Resp. at 10-11).  The collection of the Taxes before Plaintiff's tax liability is fully adjudicated in Denmark would, Plaintiff argues, violate his Due Process rights.

Plaintiff's Due Process argument is unprecedented and unconvincing.  Plaintiff asserts that the Danish court adjudicating his tax liability is the equivalent of the United States Tax Court.  United States taxpayers, however, may only bring a pre-collection challenge to a tax assessment in Tax Court when the Service has issued a notice of deficiency to a taxpayer.  See 26 U.S.C. §§ 6212, 6213.  The

---

[13]   Plaintiff does not assert that the Due Process Clause of the Fifth Amendment provides a separate ground for jurisdiction that would overcome the United States' sovereign immunity.  To the extent that Plaintiff did seek to raise this argument, the Court notes that requiring the immediate payment of taxes, subject to the taxpayer's ability to challenge the validity of the taxes and to seek a refund, does not create a Due Process violation where the taxing authority "has any chance of ultimately prevailing."  C. I. R. v. Shapiro, 424 U.S. 614, 631-32 (1976).  It is undisputed that Plaintiff has the ability, and is currently exercising his ability, to challenge the Danish tax assessment in the Danish courts.

collection of the allegedly unpaid taxes may be enjoined while the taxpayer challenges the alleged deficiency in Tax Court.  26 U.S.C. § 6213.

Plaintiff does not provide any authority for his argument that his challenge in the Danish courts is in an equivalent court or procedural posture to that of a challenge by a United States taxpayer to a notice of deficiency in the Tax Court. His wishful equating of the Danish court and the United States Tax Court is discredited by the fact that Denmark certified that the Taxes are "finally determined" and immediately collectable.  The Treaty requires the United States to treat an accepted revenue claim "as though such revenue claim were the requested State's own revenue claim finally determined in accordance with the laws applicable to the collection of the requested State's own taxes."  Treaty Art. 27 ¶ 3. Denmark's tax assessment, thus, is not at the notice of deficiency stage, but is a finally determined tax liability subject to immediate collection.  Plaintiff, like a United States taxpayer, has the right to challenge the validity of the Taxes post-collection.  See 28 U.S.C. § 1346(a)(1).  That Plaintiff must assert this right in Denmark, where the Taxes were assessed and where the Treaty requires, does not change this analysis.

Plaintiff failed to make the requisite showing that there are no circumstances under which the United States can prevail in its assertion that it has the legal

19

authority to collect the Taxes under the Treaty.[14]  The Court does not have

jurisdiction to adjudicate Plaintiff's claims under the Williams Packing

exception.[15]

b)     Regan Exception to the AIA

In Regan, the Supreme Court determined there is a further exception to the

AIA where "Congress has not provided the plaintiff with an alternative legal way

to challenge the validity of a tax."  Regan, 465 U.S. at 373.  Plaintiff argues that

the AIA exception in Regan applies in this case.

Regan involved a challenge by South Carolina to an amendment to Section

103(a) of the Internal Revenue Code, exempting interest earned on State bonds

from a taxpayer's gross income.  Id. at 370-71.  The amendment required that

bonds be issued in registered, not bearer, form to qualify for the Section 103(a)

exemption.  Id. at 371.

---

[14]    Plaintiff's remedy is to continue to contest his tax liability in Denmark, and to contest, in Denmark, the SKAT's determination that its tax assessment is immediately collectable.  See United States v. Stuart, 489 U.S. 353, 370 (1989) (Finding that the Service does not need to review the underlying facts behind a Canadian request for treaty assistance in issuing a summons pursuant to the tax treaty).

[15]    Having concluded that Plaintiff has not shown that there are no circumstances upon which the United States can prevail, the Court does not address whether equity jurisdiction is present, the second part of the Williams Packing exception to the AIA.

20

The Supreme Court observed that the taxation of interest on State-issued bearer bonds would require the States to pay bondholders a higher rate of interest on these bonds because the bond purchasers were not eligible for the Section 103(a) exemption.  Id.  South Carolina brought suit, arguing that the practical impact caused by the denial of the Section 103(a) exemption infringed on states' right to issue bonds in the form they chose, and this infringement violated the Tenth Amendment.  Id. at 371-72.

Defendant Regan argued that the AIA barred the Supreme Court from adjudicating the claim asserted by South Carolina.  Id. at 372.  The Supreme Court disagreed.  The Regan Court found that because South Carolina would not incur any tax liability by issuing non-exempt bearer bonds, the state would not have standing to contest the constitutionality of the amendment to Section 103(a) because it was not injured.  Id. at 379-80.  The Regan Court concluded that the AIA applies only "when Congress has provided an alternative avenue for an aggrieved party to litigate its claims on its own behalf."  Id. at 381.  Because South Carolina did not have an alternative means to litigate the validity of the tax,

because it did not incur it,[16] the <u>Regan</u> Court concluded that the AIA did not bar South Carolina's suit.  <u>Id.</u> at 373, 381.

Plaintiff here is litigating in Denmark the SKAT's tax assessment.  (Compl. ¶ 7; Resp. at 14).  Plaintiff argues that his ability to challenge his tax liability in Denmark does not qualify as an "alternative avenue."  (Resp. at 15).  Plaintiff argues further that because Congress did not create an alternative method for him to challenge the SKAT's tax assessment in the United States, the <u>Regan</u> exception to the AIA applies.  The Court disagrees.

"Because of the strong policy animating the [AIA], and the sympathetic, almost unique, facts in <u>Regan</u>, courts have construed the <u>Regan</u> exception very narrowly . . . ."  <u>Judicial Watch, Inc. v. Rossotti</u>, 317 F.3d 401, 408 n.3 (4th Cir. 2003).  The Eleventh Circuit has refused to expand the <u>Regan</u> AIA exception, noting that <u>Regan</u> "involved the rights of third parties to litigate the tax liability of persons against whom the tax was assessed."  <u>Leves v. I.R.S., Comm'r</u>, 796 F.2d 1433, 1434 (11th Cir. 1986).  Plaintiff is not a third party seeking to litigate another person's tax liability—Plaintiff is the taxpayer against whom the tax was assessed, and is currently pursuing legal remedies in Denmark.

---

[16]    The <u>Regan</u> Court rejected Defendant Regan's argument that South Carolina had an adequate alternative remedy in that it could urge a purchaser of any bearer bonds to bring a suit challenging the constitutionality of the amendment to Section 103(a).  <u>Regan</u>, 465 U.S. at 381.

The <u>Regan</u> Court found a limited exception to the AIA only where there was no "alternative legal way to challenge <u>the validity of a tax</u>." <u>Regan</u>, 465 U.S. at 373 (emphasis added). Plaintiff here, however, is not seeking to challenge the validity of the Taxes in this Court, but instead challenges its collection. The <u>Regan</u> Court exemption should not be extended to apply here.

Even if <u>Regan</u> applied to collection efforts, Plaintiff's argument is not persuasive. It ignores that the Treaty provides that a taxpayer must challenge the validity of an assessed tax in the applicant State seeking United States collection assistance. <u>See</u> Treaty Art. 27 ¶ 5. The Treaty does not provide an alternative means to challenge, in United States courts, the validity of a tax assessed by Denmark. Plaintiff here has an alternative means, in Denmark, to challenge the validity of the Taxes, or to seek an injunction against the SKAT's enforcement efforts.

The AIA, thus, applies to this case, and the Court lacks jurisdiction to consider Plaintiff's claims.[17]

---

[17] Even if the Court had jurisdiction to consider Plaintiff's claims, Plaintiff's Complaint would be required to be dismissed. The Treaty is clear that the United States is obligated to collect the Taxes upon Denmark's certification that they have been "finally determined." Treaty Art. 27 ¶¶ 2, 3. The Treaty does not allow the United States courts to review this determination by Denmark, specifically providing that there is no right "of administrative or judicial review of the applicant State's finally determined revenue claim by the requested State . . . ."

4.   <u>Plaintiff's Motion to Amend</u>

Plaintiff requests leave to amend his Complaint to include the additional facts alleged in his Response.  (Resp. at 15-17).

Rule 15 of the Federal Rules of Civil Procedure provides that, after a responsive pleading has been served, a party may amend only by leave of court or by written consent of the adverse party.  Fed.R.Civ.P. 15(a).  Although the rule instructs that "leave shall be freely given when justice so requires," a district court may deny leave to amend for a number of reasons, including undue delay, bad faith, or when such amendment would be futile.  <u>Hall v. United Ins. Co. of Am.</u>, 367 F.3d 1255, 1263 (11th Cir. 2004).  The decision whether to grant leave to amend rests in the sound discretion of the district court.  <u>Hall</u>, 367 F.3d at 1262.

In this case, the Court considered the United States' factual challenge to Plaintiff's Complaint based on the Court's lack of subject matter jurisdiction.  The Court considered the facts alleged in Plaintiff's Response, and considered his

---

<u>Id.</u> ¶ 5.  The Court must, under the terms of the Treaty, accept that the Taxes have been "finally determined" and the United States is obligated to assist in their collection, and cannot review Denmark's certification.

Assuming, *arguendo*, that the Court was entitled to review Denmark's certification under the Treaty, Plaintiff's sole argument that the Taxes are not immediately collectible and, thus, not "finally determined," is based on his request for *henstand*.  This is not a factual allegation but, rather, a legal conclusion under Danish law for which Plaintiff has not provided any supporting legal authority.  (<u>See</u> *supra* at 16-17).  Even if the Court had jurisdiction over this matter, Plaintiff does not have a cognizable claim, and his Complaint is required to be dismissed.

proposed amended complaint, in concluding that it lacked subject matter jurisdiction over Plaintiff's claims.  Plaintiff's proposed amendments do not affect the conclusion that the United States' sovereign immunity preludes jurisdiction over this matter.  Plaintiff's Motion to Amend, therefore, is denied because the proposed amendment would be futile.  See Burger King Corp. v. Weaver, 169 F.3d 1310, 1320 (11th Cir. 1999) ("[T]he denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."); Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1255 (11th Cir. 2008) ("Because justice does not require district courts to waste their time on hopeless cases, leave may be denied if a proposed amendment fails to correct the deficiencies in the original complaint or otherwise fails to state a claim.").

IV.   **CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the United States' Motion to Dismiss [7] is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to Amend [10] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion for Preliminary Injunction [2] is **DENIED AS MOOT**.[18]


**SO ORDERED** this 15th day of January, 2016.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[18]     As the Court noted at the June 3, 2015, hearing, because the Court find that it lacks jurisdiction to adjudicate Plaintiff's claims, the Court cannot consider Plaintiff's Injunction Motion.